UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASIM AMRAN,<br>    Plaintiff,<br><br>  v.<br><br>BRAD COWIN, SUPERINTENDENT<br>MCI -NORFOLK, MICHAEL<br>FRATTASIO, and TIMOTHY SHERRY,<br><br>    Defendants. | Civil Action No. 19-10454-DJC |

**MEMORANDUM AND ORDER**

**CASPER, D.J.**                        **August 2, 2019**

For the reasons stated below, the Court denies the motion to proceed without prepayment of fees and costs, denies without prejudice the motion for order to allow the United States Marshal to complete service, dismisses *sua sponte* portions of the complaint, and issues summonses as to the defendants.

**I. Background**

On March 11, 2019, *pro se* Plaintiff Asim Amran ("Amran") filed a complaint (D. 1) against former Superintendent of MCI – Norfolk Brad Cowin ("Cowin"), Lieutenant Michael Frattasio ("Frattasio") and Corrections Officer Timothy Sherry ("Sherry"). Amran's motion to proceed *in forma pauperis* (D. 6) and motion for order to allow U.S. Marshals to complete service (D. 7) are also pending.

The following is a summary of facts as alleged by Amran. Amran is serving a life sentence at MCI-Norfolk. Compl. ¶ 7. He suffers from colitis, a medical condition that can cause him to

soil himself without warning. Compl. ¶¶8-10. Although he is receiving treatment for the disease, it is not under control. Compl. ¶10. Accordingly, when Amran leaves his housing unit he wears adult diapers as a precaution. Compl. ¶10. Deputy Superintendent Bennett ("Bennett") provided a written letter in Amran's housing unit that Amran should be permitted to use the bathroom facilities at any time due to his illness. Compl. ¶13.

On July 19, 2018, Sherry was assigned as a substitute Corrections Officer for Amran's housing unit. Compl. ¶ 17. At 1:00 p.m., Amran was in the yard. Compl. ¶ 18. At 1:40 p.m., Amran became aware that he had soiled his diaper. Compl. ¶ 19. Amran went back to his unit and asked Sherry for permission to use the bathroom. Id. Sherry refused to allow Amran to use the bathroom and told him return to the yard. Id.

Amran tried to explain the situation, pointing to the letter concerning his condition on the desk. Compl. ¶ 19. Sherry responded "you want to play games, let's play games." Compl. ¶ 20. Sherry then told Amran to go outside and come back and ask permission to use the bathroom. Compl. ¶ 21. Amran did exactly that and thereafter Sherry gave Amran permission to use the bathroom. Compl ¶ 22. As Arman began to climb the stairs to his cell, Sherry called him back to his office. Compl ¶ 23. At this point Sherry told Amran, in front of many inmates, "drop your pants and diaper and let me see the shit." Id. Amran was shocked at the request and repeated it back to Sherry, "You want me to drop my pants and diaper and show you the shit in my diaper?" Id. Sherry responded, "Yes." Id.

Thereafter, Amran sought the assistance of Lieutenant Frattasio. Compl. ¶24. Frattasio returned with Amran to his housing unit and sent Amran to use the bathroom in his cell. Compl. ¶ 24. Frattasio then proceeded to the office and reprimanded Sherry for not complying with the

2

written order. Compl. ¶25.

On July 27, 2018, Amran filed a grievance concerning the incident requesting, among other things, that Sherry be terminated from his employment. Compl. ¶28.

The following week, Amran sought out Bennett to request a letter for him to carry to make these situations easier. Compl. ¶30. Bennett was not aware of the incident with Sherry, and asked Frattasio what had occurred. Id. Frattasio "began covering up for" Sherry, at which point, Amran told Bennett what had happened and requested to know what consequences Sherry would face. Id. According to Amran, Sherry was not disciplined. Id.

On September 21, 2018, Amran filed another grievance because he had received no response concerning his initial grievance. Compl ¶ 36. On September 24, 2018, Amran received an extension notice. Compl. ¶36. On November 13, 2018, both grievances were denied because "although . . . [Amran was] . . . questioned on [his] return to Unit 2-3, the Officer refutes the claim of denial due to medical necessity." Compl. ¶38. The response to the second grievance also denied Amran's claims of retaliation. Compl. ¶39.

On November 19, 2018, Amran appealed both grievances. Compl. ¶42. On February 5, 2019, Amran received denials of his appeals. Compl. ¶44.

Amran claims that he was retaliated against by being removed from the list as a potential "house man" job; a desirable job which comes with better pay and a single cell. Compl. ¶67. Amran claims that upon "the calling of Lt. Frattasio," non-defendant corrections officer Perry (now retired) ensured that Amran's name was removed from the list and that another non-defendant Corrections Officer Ogara also did not give him the job. Id. Amran claims that Bennett agreed with Amran that this was retaliation and that his name must be placed back on the list. Compl. ¶68.

3

## II. Discussion

### A. Amran's In Forma Pauperis Motion is Denied as Moot and Motion for Service by the United States Marshal is Denied

Subsequent to filing the motion to proceed *in forma pauperis*, Amran paid the $400 filing fee. D. 8. Accordingly, Amran's motion to proceed *in forma pauperis* (D. 6) is <u>DENIED</u> as <u>MOOT</u>. Amran has also moved for an order to allow the United States Marshal to serve process. D. 7. While Amran claims that he is indigent, a review of Amran's prison account statement (D. 5) reveals that he has sufficient funds to pay the costs associated with service of the defendants in this action. Amran also claims that because of mail problems at MCI-Norfolk, it will be difficult to serve the defendants by mail. Amran is directed to Fed. R. Civ. P. 4(m) with respect to service requirements. To the extent that Amran encounters difficulty serving the defendants, he may seek an extension of time pursuant to Rule 6(b)of the Federal Rules of Civil Procedure. For all of these reasons, Amran's motion for service by the United States Marshal (D. 7) is <u>DENIED</u> without prejudice.

### B. Preliminary Screening of the Complaint

Because Amran is a prisoner, his complaint is subject to screening pursuant to 28 U.S.C. § 1915A ("Section 1915A"). Section 1915A requires the Court to review prisoner complaints in civil actions in which a prisoner "seeks redress from a governmental entity, or officers or employees of a governmental entity," and to dismiss any action if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks relief from a defendant immune from such relief. <u>See</u> 28 U.S.C. § 1915A(a) & (b). In connection with this preliminary screening, a *pro se* complaint is construed generously. <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980);

Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).

### 1. Eleventh Amendment Sovereign Immunity – Section 1983 Civil Rights Official Capacity Damages Claims

"The Eleventh Amendment provides a state immunity from 'any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State'", including a "state's own citizens." Sinapi v. Rhode Island Bd. of Bar Examiners, 910 F.3d 544, 553 (1st Cir. 2018) (quoting U.S. Const. amend. XI); see Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought"). Amran has not set forth any basis for waiver with respect to claims for civil rights violations brought pursuant to 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting § 1983). The Eleventh Amendment also extends to confer immunity from suit upon state officials acting in their official capacity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-102 & n. 11 (1984). And, in any event, a state and state officers sued in their official capacity, are not "persons" under Section 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (although state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office); accord Hafer v. Melo, 502 U.S. 21, 25 (1991) (same). Amran's complaint for monetary relief from each of the defendants for actions taken in their "official" capacity under Section 1983 are, therefore, not cognizable. Accordingly, all claims against the defendants for monetary damages for actions taken in their official capacities under Section 1983 are DISMISSED.

### 2. Section 1983 Supervisory Claims Against Cowin are Dismissed

"[A] supervisor may not be held liable under section 1983 on the tort theory of *respondeat superior*, nor can a supervisor's section 1983 liability rest solely on his position of authority." Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016). Rather a claim for supervisory liability under Section 1983 "has two elements: first, the plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights. . . [and] . . .[s]econd, the plaintiff must show that the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Id. (quotations and alterations omitted). Even presuming Amran has pleaded a plausible violation of his constitutional rights, even a generous reading of Amran's complaint does not provide a plausible factual basis demonstrating the requisite linkage between Cowin to such conduct. Accordingly, the claims against Cowin for supervisory liability under Section 1983 are DISMISSED.

### 3. Fourteenth Amendment Claims against Cowin Concerning the Grievance Process and Investigation

Although Amran appears to be invoking the due process clause of the Fourteenth Amendment to the United States Constitution, a prisoner has no Fourteenth Amendment liberty interest in a grievance procedure. See Holloman v. Clarke, 244 F. Supp. 3d 223, 230 (D. Mass. 2017) (no constitutionally protected interest in grievance procedure regardless if sufficient process was supplied in disciplinary proceedings); Moseley v. Spencer, No. CV 15-13661-LTS, 2016 WL 347305, at *5 (D. Mass. Jan. 27, 2016) (no constitutionally protected interest in prison responding to or denying grievances); Hicks v. Ryan, No. CIV.A. 13-10709-RGS, 2013 WL 1992679, at *10

(D. Mass. May 9, 2013) (no liberty interest in grievance procedure where prison grievance officer delayed grievances)(collecting cases). While "prison officials who punish a pretrial detainee must provide sufficient process, Ford v. Bender, 768 F.3d 15, 27 (1st Cir. 2014), inmates do not have a constitutionally protected right to a grievance procedure." Holloman, 244 F. Supp. 3d at 230 (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Amran alleges that Cowin failed to investigate his grievances properly, failed to respond to his grievances in a timely fashion, and failed to discipline Sherry. Compl. ¶¶31 -67. Such allegations fail to state a claim upon which relief can be granted. First, where there are no allegations that Cowin was involved in any alleged underlying misconduct, "the alleged mishandling of [the prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim under the due process clause.'" Trythall v. O'Mara, No. 11-CV-458-JD, 2012 WL 1216270, at *4 (D.N.H. Mar. 19, 2012) (quoting Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011)); see Leavitt v. Allen, 46 F.3d 1114 (1st Cir. 1995) (unpublished decision) (holding that a prisoner's allegations that prison officials "failed to properly investigate his grievances cannot support a constitutional claim"). Second, Cowin's failure to comply with "grievance response time limitations . . . does not create a liberty interest protected by the Fourteenth Amendment." McGoldrick v. Farrington, 462 F. Supp. 2d 112, 114 (D. Me. 2006). Finally, Amran's dissatisfaction with the lack of disciplinary action against Sherry is not cognizable, because Amran does not have any constitutionally protected interest in a guard being disciplined or prosecuted. Saunders v. Pelkie, No. 15-CV-0225-JD, 2015 WL 4634931, at *1 (D.N.H. July 13, 2015), report and recommendation approved sub nom. Saunders v. Strafford Cty.

Dep't of Corr., Superintendent, No. 15CV225-JD, 2015 WL 4628734 (D.N.H. July 31, 2015) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)) (dismissing claim where prisoner had no constitutionally protected right to have corrections officer, whose conduct purportedly amounted to sexual misconduct under prison's regulations, disciplined or prosecuted). Where there is no liberty interest in a grievance procedure or having another officer disciplined, these claims do not state a Section 1983 claim. Accordingly, the personal capacity Fourteenth Amendment claims relating to the grievance procedures and investigation process under Section 1983 as to Cowin are DISMISSED.

### 4. Claims under the Health Insurance Portability and Accountability Act of 1996

There is no private right of action under Health Insurance Portability and Accountability Act of 1996, 29 U.S.C.A. § 1181 et seq. ("HIPAA"). Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009). Accordingly, all claims purportedly brought under HIPAA are DISMISSED.

### III. Conclusion and Order

Based on the foregoing, it is hereby Ordered that:

1. Amran's motion to proceed in forma pauperis (D. 6) is hereby DENIED as MOOT;

2. Amran's motion to allow the United States Marshals Service to serve the complaint (D. 7) is DENIED without prejudice;

3. All 42 U.S.C. §1983 official capacity claims for monetary damages against all Defendants are DISMISSED with prejudice. All claims for prospective injunctive relief against Defendants remain and shall proceed;

4. The 42 U.S.C. §1983 personal capacity supervisory liability claims against Defendant Cowin are hereby DISMISSED without prejudice;

5. The 42 U.S.C. §1983 claims under the Fourteenth Amendment concerning the grievance and disciplinary process against Defendant Cowin are DISMISSED with

prejudice;

6. All claims against all Defendants under HIPAA, 29 U.S.C.A. § 1181 et seq., are <u>DISMISSED</u> with prejudice;

7. The Clerk shall issue a summons for service of the complaint on the Defendants. The Clerk shall send the summons, complaint, and this Order to the Plaintiff, who must thereafter serve the Defendants in accordance with Federal Rule of Civil Procedure 4(m). Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the plaintiff shall have 90 days from the date of this Order to complete service; and

8. Defendants are required to respond to the complaint pursuant to 28 U.S.C. §1997(g)(2).

**SO ORDERED.**

                                        **/s/ Denise J. Casper**
                                        **UNITED STATES DISTRICT JUDGE**